BRIGGS v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.    October 26, 1903.)

No. 1,868.

1. MASTER AND SERVANT—RAILROADS—DEATH OF FIREMAN—EQUIPMENT OF ENGINE—PILOTS.

Where a railroad company necessarily substituted a short or "stub pilot" in place of a long pilot previously used on an engine engaged in interstate traffic, in order to equip the engine with an automatic coupler, as required by Act Cong. March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), such change did not constitute actionable negligence, though charged to have been the cause of the overturning of the engine, and the killing of plaintiff's intestate, who was fireman thereon, in a collision with a bunch of cattle on the track.

2. SAME—PROXIMATE CAUES.

Where, at the time of a collision between a passenger train and a bunch of over 100 cattle on the track, some of which were lying down, resulting in the fireman's death, the train was running at the rate of 35 miles per hour, and, by reason of the darkness, neither the fireman nor the engineer saw the cattle in time to arrest the motion of the train to any considerable extent before the cattle were struck, the fact that the engine was equipped with a stub pilot, which was less able to throw cattle from the track than a long pilot, which had been previously taken from the engine, constituted no substantial evidence that the use of a stub pilot was the proximate cause of the fireman's death.

3. SAME—EXCLUSION OF EVIDENCE—REVIEW.

Where a witness was not permitted to answer a question on objection, and the record did not disclose what answer was expected, the objection will not be reviewed on appeal.

¶ 3. See Appeal and Error, vol. 3, Cent. Dig. § 2905.

In Error to the Circuit Court of the United States for the District of South Dakota.

T. H. Null, for plaintiff in error.

Coe I. Crawford, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge. This is an action for personal injuries which was brought by Eva L. Briggs, the plaintiff in error, against the Chicago & Northwestern Railway Company, the defendant in error, in the Circuit Court of the United States for the District of South Dakota. The facts, as they were developed at the trial, are few and simple. The plaintiff's husband was a locomotive fireman on a passenger engine belonging to the defendant company, which ran between Huron and Pierre, in the state of South Dakota. On the night of July 19, 1900, in making the trip from Huron to Pierre, the engine ran into a herd of over 100 head of cattle; the result being that it was derailed and overturned, and the plaintiff's husband was killed. She brought this action, alleging as a ground of recovery that the engine in question was not equipped with a suitable pilot to throw cattle and horses from the track when they were encountered. At the conclusion of plaintiff's evidence, the trial court directed a verdict for the defendant, and such action on its part is assigned for error.

The following facts are undisputed: The engine which was overturned was a light passenger engine. Originally it had been equipped with a long pilot (that is, one which projected some distance ahead of the frame of the engine), but, to comply with the act of Congress of March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), requiring common carriers to equip cars used in moving interstate traffic with couplers coupling automatically by impact, it became necessary to remove the long pilot, and substitute a shorter or "stub" pilot, as it is termed. The engine could not be equipped with an automatic coupler without making this change in the pilot. The change was effected some time in June, 1900, and the plaintiff's husband continued to serve as a fireman on the engine from that time forward until he was killed. The stub pilot, at the time of the accident, was in good order, and in no respect defective or out of repair. After the passage of the act of Congress above mentioned, and for at least one or two years prior to the accident, the defendant company had been removing long pilots from its engines, and substituting stub pilots in lieu thereof, so that automatic coupling appliances might be attached to the front end of their engines as well as to the rear end. Indeed, "stub pilots," as they are termed, such as the engine in question was provided with, were in general use on railroads wherever the Janney automatic coupling appliances were used. At the time of the accident the train was running at the rate of 35 miles per hour. There were over 100 head of cattle bunched on the track, some of them lying down, and some standing up; and, owing to the darkness of the night, neither the

plaintiff's husband nor the engineer saw them in time to stop the train or to arrest its motion to any considerable extent before they were struck.

On this state of facts, we are of opinion that no error was committed by the learned trial judge in directing a verdict for the defendant. In the first place, we do not perceive that there was any substantial evidence from which a jury of 12 reasonable men could have inferred or found that the defendant company was guilty of culpable negligence; that is to say, of a want of reasonable or ordinary care. It was its duty, or at least its privilege, to equip its engine, as it did, with an automatic coupling appliance, which it could only do by removing the long pilot and substituting a shorter one. The shorter pilot which it adopted was then in general use on other roads, and was regarded as a reasonably safe appliance, and at the time of the accident it was in no wise out of repair. As a general rule, a railroad company is not required to use upon all of its cars the safest possible appliances, or those of the latest and most improved pattern, but is at liberty to make use of such appliances as are at the time in general use on other well-managed railroads, and are of a kind that are regarded as reasonably safe. Northern Pacific Railroad Company v. Blake, 11 C. C. A. 93, 63 Fed. 45. In the case in hand it appears that stub pilots are in general use, and are the only ones that can be successfully employed when engines are fitted with automatic couplers. In what respect, then, was the defendant company guilty of any negligence? Counsel for the plaintiff in error says that he concedes that the company was not negligent in leaving its road unfenced, but he suggests that as the engine in question happened to be employed at the time in what is termed "open range country," where cattle roamed at will, the defendant company was negligent in removing the long pilot and substituting a shorter one. We cannot adopt this view. As locomotive engines are liable to be used on any portion of a railroad, and as they may be needed at any moment to handle interstate traffic, we think that an interstate carrier like the defendant company is entitled to have all of its engines so equipped that they may at any time be used in such service without violation of the act of Congress, and that it cannot be found guilty of negligence in so doing.

In the second place, we feel disposed to agree with the views which were expressed by the lower court when directing a verdict for the defendant—that there was no substantial evidence tending to show that the death of the plaintiff's husband was proximately caused or occasioned by the fact that the engine was not provided with a long pilot. It is most reasonable to believe that if the engine had been provided with a long pilot, and had run into a herd of 100 head of cattle asleep on the track, going at a speed of 35 miles an hour, the result would have been a derailment and the overthrow of the engine. That such would not have been the result if it had had a long pilot, instead of a short one, seems to us to be mere speculation, or, in other words, an inference resting upon no substantial basis of fact such as will serve to sustain a verdict.

Counsel for the plaintiff in error calls our attention to the fact that he asked one of the plaintiff's witnesses, namely, the engineer of the train, whether, if the engine in question had been equipped with a long pilot, such as was at first attached to it, it would have cleared the track of cattle standing up when struck; and he complains because the witness was not permitted to answer the question. We think, however, that if he had been permitted to answer, and had replied in a manner favorable to the plaintiff, the answer would have been a mere guess or surmise on his part, rather than credible expert testimony on which the jury could have lawfully founded a verdict in favor of the plaintiff. Such testimony, in our opinion, would have been in the highest degree speculative and unreliable. The question, however, was left unanswered, and the fact that the record fails to disclose in any form what answer the engineer would have given to this question—whether favorable or unfavorable to the plaintiff—if he had been permitted to answer it, precludes this court from noticing the alleged error, or reversing the judgment because the witness was not permitted to answer it, since, to establish a reversible error in the rejection of evidence, it must be made to appear affirmatively that the excluded evidence was competent, and of such materiality and weight that its exclusion has probably caused injury to the party offering the same. Atchison, Topeka & Santa Fe Railroad Co. v. Phipps, 125 Fed. 478 (decided at the present term of this court). See, also, Packet Company v. Clough, 20 Wall. 528, 542, 22 L. Ed. 406. There is in the case before us no evidence that the failure to provide the engine in question with a long pilot, in place of the stub pilot, was the proximate cause of the injury.

The judgment below must be affirmed. It is so ordered.